UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ISSAC DECRAIS HARRIS,

        Petitioner,

v.                                           Case No. 2:08-cv-198
                                           HON. R. ALLAN EDGAR

GREG MCQUIGGIN,

        Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner Issac Decrais Harris, filed this petition for writ of habeas corpus challenging his convictions for carrying a weapon with unlawful intent, armed robbery, and felony firearm. Petitioner was sentenced as an habitual offender to concurrent prison terms of 28 months to 90 months for carrying a concealed weapon, and 168 months to 360 months for armed robbery. Petitioner also received a consecutive term of imprisonment of two years on the felony-firearm conviction.  Petitioner was convicted of robbing a gas station in Adrian, Michigan.  Petitioner was convicted of using a gun and taking $250.00 to $300.00 out of the cash register of the store. Surveillance cameras in the store recorded the crime.  The store cashier identified petitioner as the robber and a witness identified petitioner as the individual in the surveillance videotape.  Petitioner was also convicted of assault with intent to rob while armed.  The Michigan Court of Appeals vacated the assault with intent to rob while armed conviction as a violation of double jeopardy.  The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.  The parties have briefed the issues and the matter is now

ready for decision.  In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate

Judges to submit proposed findings of fact and recommendations for disposition of prisoner

petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner raises the following claims:

I.  Defendant's state and federal constitutional right to confrontation were violated by admitting the out-of-court statement made by a non-testifying witness and defendant's convictions must be reversed.

II.  The prosecutor denied defendant his state and federal constitutional right to a fair trial by forcing defendant to comment on the credibility of prosecution witnesses.

III.  Defendant was denied his state and federal constitutional right to a fair trial where the prosecutor cross-examined him on the irrelevant and prejudicial matter of his employment status.

IV.  The prosecutor violated defendant's state and federal constitutional due process rights to a fair trial when in rebuttal argument he improperly appealed to the jury's civic duty to make the streets and community safe.

V.  Defendant was denied the effective assistance of counsel by his attorney's failure to challenge the admissibility of the identification testimony of the only witness who positively identified him, and by defense counsel's failure to object to multiple instances of error.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA,

this Court must follow the standard of review established in that statute.  Pursuant to the AEDPA,

an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state

conviction cannot be granted with respect to any claim that was adjudicated on the merits in state

court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the Supreme Court of

the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Id.*  A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 412.  Rather, the application must also be "unreasonable."  *Id.*  Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable.  *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).  Rather, the issue is

- 3 -

whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner asserts that his confrontation rights were violated when testimony concerning a statement made to police officers from the father of petitioner's girlfriend was given during trial. An officer testified that the father had given the gloves to his daughter and petitioner had worn the gloves when working on vehicles. Petitioner claims that since his girlfriend's father never testified at trial, the glove testimony violated his confrontation rights. The Michigan Court of Appeals held that since petitioner failed to preserve the issue for appeal the issue should be only reviewed for plain error. The Michigan Court of Appeals rejected petitioner's claim explaining that no plain error occurred:

> Police officers found a glove in the trunk of Moore's vehicle. Moore's father told the officers he gave the gloves to his daughter, but that defendant usually wore them when working on the vehicles. During the trial, there was testimony concerning Moore's father's statement. Defendant contends that the admission of Moore's father's out-of-court statement to the officers was a violation of his constitutional right to confrontation.

- 4 -

Plaintiff argues that because the testimony at issue was volunteered at trial by the witness, was not the result of any police interrogation, and related only to a glove circumstantially linking defendant to the robbery, there was no plain error. Further, defendant elicited similar testimony concerning the glove during cross-examination, and thus, any error was waived.

We agree that defendant waived any allegation of error by pursuing his own line of questioning concerning the glove. The intentional relinquishment or abandonment of a known right constitutes waiver, which extinguishes any error on appeal. *People v Carter*, 462 Mich 206, 214-215; 612 NW2d 144 (2000). Error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence. *People v Griffin*, 235 Mich App 27, 46; 597 NW2d 176 (1999).

But even assuming error, and that such error was not waived, we nevertheless find no basis for reversal because any error was harmless. The erroneous admission of Moore's father's out-of-court statement was unlikely to have been outcome determinative in light of the strong evidence of guilt. In this case, there was ample additional evidence linking defendant to the robbery of the gas station. Most importantly, Stegg unequivocally identified defendant as the armed man in the surveillance video taken during the robbery. In addition, defendant was arrested about eight blocks from the robbery scene, at a residence owned by Moore's father. In a search of the apartment above the garage, where defendant resided on occasion, the police found bullets that Moore told the detectives belonged to defendant. Testimony at trial indicated that the bullets matched the handgun used by the perpetrator of the robbery of the gas station, as seen on the surveillance video. Further testimony and other evidence showed that defendant possessed at least two pairs of athletic shoes with Velcro straps, one of which he was wearing at the time of the stop, and that he occasionally wore the shoes with the straps unfastened. On the surveillance video, it appeared that the armed robber wore shoes consistent with that description. Defendant has failed to show that he was prejudiced by any alleged error in the admission of testimony concerning the glove.

The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right

. . . to be confronted with the witnesses against him."  In *Crawford v. Washington*, 541 U.S. 36

(2004), the Supreme Court held that testimonial statements made against a defendant ordinarily require that the witness be present at trial and subject to cross-examination.

Petitioner failed to object to the glove testimony.  Respondent asserts that petitioner procedurally defaulted this issue by failing to object to the testimony during trial.  When a state-law default prevents further state consideration of a federal issue, the federal courts are ordinarily precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  The Sixth Circuit applies a four-part test to determine whether a claim is procedurally defaulted: (1) the court must first determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the state procedural rule; (3) the default must be an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) if the foregoing are met, the petitioner must demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001).  There may be an "exceptional case in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 122 S.Ct. 877, 878 ( 2002).  A petitioner may also excuse a default by making a colorable claim of innocence; that is, he has shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray v. Carrier*, 477 U.S. 478, 495 (1986)).   This exception is reserved for a very narrow class of cases, based on a claim of "new reliable evidence."  *Schlup*, 513 U.S. at 315, 324.

Further, even though the Court of Appeals applied a limited review of the claimed error to determine whether it affected the outcome, petitioner's failure to object is still considered a procedural default. *See Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989). Petitioner never objected to the glove testimony during trial. It is clear that the contemporaneous objection rule was well-established at the time of petitioner's trial. *See, e.g.*, *People v. Kelly*, 423 Mich. 261, 271 (1985). A rule designed to arm trial judges with the information needed to rule reliably "serves a governmental interest of undoubted legitimacy." *Lee v. Kemna*, 534 U.S. 362, 384 (2002). Petitioner's failure to comply with the state's independent and adequate state procedural rule, i.e., making a contemporaneous objection, caused him to default his claims in state court. *See Wainwright*, 433 U.S. at 87-88; *West v. Seabold*, 73 F.3d 81, 84 (6th Cir.), *cert. denied*, 518 U.S. 1027 (1996). Accordingly, review by this court is barred unless petitioner can show cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

Petitioner has attempted to show prejudice by asserting attorney error. The Michigan Court of Appeals rejected this claim, concluding that it was trial strategy to not object to the glove testimony.

> Trial counsel was not ineffective for failing to object to the admission of the out-of-court statements about the gloves made by Moore's father. At the evidentiary hearing on remand, trial counsel testified that he did not object to Officer Grayer's testimony about the gloves because he expected Moore to testify that although defendant wore gloves when he worked on her car, they were not the same gloves that were in the courtroom. Trial counsel explained that Moore's anticipated testimony would have been consistent with defendant's testimony that he wore purple gloves when he worked on the car, and not the blue glove that was shown to the jury. *Id*. With the benefit of hindsight, it appears that this strategy was unsuccessful because Moore did not testify. Nonetheless, counsel was not ineffective for failing to object to the testimony. Counsel's decisions with regard to

- 7 -

this matter involved trial strategy, and defendant has not overcome the presumption of sound strategy. Ineffective assistance of counsel will not be found merely because a strategy did not work. *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

In the opinion of the undersigned, petitioner cannot show that counsel erred in failing to object to the glove testimony. Petitioner's failure to object constituted a procedural default that petitioner is unable to overcome in this proceeding. Moreover, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner alleges prosecutorial misconduct occurred during his trial. The Michigan Court of Appeals reviewed these claims and found that no reversible error resulted from the prosecutor's conduct:

> Defendant argues that he was denied his right to a fair trial by three instances of prosecutorial misconduct. We agree that the prosecutor engaged in misconduct. Nonetheless, under the circumstances of this case, we find no error requiring reversal.

> Defendant failed to object to the prosecutor's conduct below. This Court reviews unpreserved claims of constitutional error for plain error affecting substantial rights. *Carines, supra* at 763. No error requiring reversal will be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction. *People v Green*, 228 Mich App 684, 693; 580 NW2d 444 (1998).

> Defendant argues that the prosecutor committed misconduct in forcing defendant to comment on the credibility of prosecution witnesses. Defendant contends that the prosecutor badgered defendant by continually questioning him regarding his opinion of the truthfulness of the prosecution witnesses' testimony. During cross-examination, the prosecutor questioned defendant with regard to whether the police officers were lying in their testimony. Defendant answered that they were.

- 8 -

Generally, it is improper for the prosecutor to ask a defendant to comment on the credibility of prosecution witnesses. *People v Buckey*, 424 Mich I, 17; 378 NW2d 432 (1985). In this case, the prosecutor committed misconduct when he questioned defendant regarding the credibility of the police witnesses. Defendant's opinion of the witnesses' credibility is not probative of the matter. *Id*. Accordingly, the prosecutor's questions to defendant asking him to address the credibility of police witnesses constituted plain error.

However, as noted above, unpreserved plain error does not require automatic reversal by this Court. *Carines, supra* at 763. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocense." *People v Ackerman*, 257 Mich Ap 434, 448-449; 669 NW2d 818 (2003). "[W]here a curative instruction could have alleviated any prejudicial effect," this Court "will not find error requiring reversal." *Id.* at 449.

Defendant has not demonstrated how he was prejudiced by the prosecutor's conduct. Defendant does not argue that the prosecutor's questioning resulted in the conviction of an actually innocent man or affected the public reputation of judicial proceedings. As discussed above, there was positive evidence of defendant's guilt adduced at trial. Moreover, a timely objection by defense counsel could have cured any prejudice. Consequently, reversal is unwarranted.

Defendant argues that the prosecutor improperly cross-examined defendant about his employment status and how he supported himself prior to his arrest. He contends that this line of questioning was harmful and unfairly prejudicial, and denied defendant his due process right to a fair trial.

The prosecutor's questions regarding defendant's employment status were improper. In general, "[w]hether [a] defendant . . . was poor or unemployed is legally irrelevant to the issue of guilt or innocence." *People v Andrews*, 88 Mich App 115, 118; 276 NW2d 867 (1979). Therefore, it is usually improper for a prosecutor to make reference to a defendant's unemployment or poverty for the purpose of proving motive, or for character assassination, or credibility. *People v Johnson*, 393 Mich 488, 496-498; 227 NW2d 523 (1975); *Andrews, supra* at 118-119. Our Supreme Court has stated:

> Evidence of poverty, dependence on public welfare, unemployment, underemployment, low paying or

> marginal employment, is not ordinarily admissible to show motive. The probative value of such evidence is diminished because it applies to too large a segment of the total population. Its prejudicial impact, though, is high. There is a risk that it will cause jurors to view a defendant as a "bad man" – a poor provider, a worthless individual. [*People v Henderson*, 408 Mich 56, 66; 289 NW2d 376 (1980) (citations omitted.)]

Despite the prejudicial nature of the subject matter, we find reversal unwarranted in this case. The focus on defendant's employment status was brief, and defendant responded appropriately, indicating that he had been recently employed and working on the side doing "customizing." Defendant has not demonstrated that the prosecutor's improper conduct was outcome determinative. As discussed above, there was strong evidence at trial of defendant's guilt. And we cannot conclude that the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocence. Further, any danger that the jurors might have drawn improper inferences from the prosecutor's line of questioning could have been sufficiently cured by a timely objection and curative instruction.

Defendant argues that he was denied a fair trial by the prosecutor's misconduct when in rebuttal argument he improperly appealed to the jury's civic duty to make the streets and community safe. We agree that the prosecutor's comments were improper.

At the close of his rebuttal argument, the prosecutor stated:

> I don't want [defendant] to have that opportunity again. It is time to take some steps to get this street safe, this community safe. And we don't want [defendant] to have that opportunity to do this again. And if he was to do it again maybe he would and if he did maybe he will pull the trigger the next time. Thank you.

Generally, it is inappropriate for a prosecutor to "resort to civic duty arguments that appeal to the fears and prejudices of jury members...." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). In general, a civic duty argument injects issues into the jury's deliberations that are broader than defendant's guilt or innocence of

the charges.  *Bahoda, supra* at 284; *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595 (2005).

The prosecutor's closing statement constituted an improper appeal to the jury's civil duty.  By telling the jury that it should convict defendant of the charges against him because it would increase the safety of the streets and community and prevent defendant from having the opportunity to commit another crime, the prosecutor introduced issues into the jury's deliberations that were irrelevant to defendant's guilt or innocence of the particular crimes with which he was charged.  The effect of the prosecutor's statements was to argue that the jury had a civil duty to convict defendant.

Nonetheless, the reversal of defendant's convictions is unwarranted.  Any prejudicial effect could have been cured by a timely objection and appropriate instruction. In light of the strong evidence of guilt, as discussed above, defendant has failed to show the requisite prejudice. Further, defendant has not demonstrated that the prosecutor's argument resulted in the conviction of an actually innocent man or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocence.

In the opinion of the undersigned, petitioner has failed to show how his rights were violated or that any prejudice resulted from these errors.  Ultimately, the issue for the Court is whether the prosecutor's conduct denied petitioner a fundamentally fair trial. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940 (1982).  *See also United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) (adopting test for evaluation of prosecutorial misconduct on direct review); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993) (applying similar test to habeas action). Inappropriate remarks or conduct by a prosecutor constitute a matter of constitutional concern only when it is egregious enough to deprive the defendant of a fair trial.  *See United States v. Chambers*, 944 F.2d 1253 (6th Cir.), *cert. denied*, 112 S. Ct. 1217 (1992); *United States v. Mohney*, 949 F.2d 1397, 1400 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 1940 (1992); *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989).  The Michigan Court of Appeals evaluated each of petitioner's claims and concluded that any error by the prosecution was not prejudicial to petitioner and did not result in the conviction

of someone who was innocent of the crimes.  The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The Michigan Court of Appeals also rejected each of petitioner's claims of ineffective assistance of counsel.  Petitioner claimed that his trial counsel erred by not objecting to identification testimony read into evidence from his preliminary examination from a witness who was unavailable at trial.  The court initially remanded petitioner's ineffective assistance of counsel claims.  The lower court held a hearing on the claims and concluded:

> THE COURT:  I agree.  As it relates to the ineffective assistance of counsel, this is a case that I recall very specifically the trial itself. Having heard some preliminary motions and so forth in this particular case and having some idea what the trial was about and then watching Mr. Baker perform as defense counsel in this particular case, Mr. Baker did an amazing job and he very well represented Mr. Harris in this particular case.
>
> The defendant in a motion of this nature bears a very heavy burden pursuant to Strickland and Washington.  First of all, they have to show that counsel's performance was deficient and the errors were so serious that he was not performing as counsel. and secondly, that the deficient performance prejudiced the defendant.  That is to say that they have to show that the existence of reasonable probability but for those errors the result of the proceeding would have been different. There isn't any question in my mind that the results would not have been any different.
>
> The entire focus of this trial was the video tape and whether or not it was Mr. Harris.  My recollection of the trial there was some discussion about the fact, my recollection was, that Mr. Harris had a stuttering problem and that the voice on the tape showed somebody that didn't stutter.  There was testimony about the fact that when he is in an excited state that he doesn't stutter.

When you look at the trial as a whole and watch the performance of Mr. Baker as a defense attorney in this case I think he did a sterling job. The jury was out for sometime where they should have been out for 20 minutes. If this was a civil case and you had a motion for summary disposition this case wouldn't have gone to trial. But he has a constitutional right to have a trial and he did and Mr. Baker did a wonderful job as his defense attorney.

As Mr. Baker testified today the decisions that he made were part of trial strategy. If all of the errors that were objected to by counsel had been cured at the time of trial it would have made no difference at all. The jury sat there and watch a video tape of the defendant committing an armed robbery. It was clear as a bell. The court could see it. The jury could see it and Mr. Harris could see it and everybody could see it. And even with that Mr. Baker had everybody hanging with his talents as a defense counsel.

Mr. Harris received probably the best representation that he could have received by an attorney practicing law. He had that opportunity and he was convicted. And the court will find that there was no ineffective assistance of counsel. And the court will find that his counsel is very effective. Thank you.

On appeal, the Michigan Court of Appeals rejected the claims stating:

Defendant has not overcome the strong presumption of trial strategy or otherwise established that counsel's performance was deficient with regard to any of the alleged errors by trial counsel. Even if counsel's performance was deficient, defendant has failed to show that he was prejudiced.

First, defendant argues that the failure of his trial attorney to move to suppress the in court identification of defendant by Luce during the preliminary examination constituted ineffective assistance of counsel. As noted above, Luce's preliminary examination testimony was read to the jury because Luce was unavailable to testify at trial.

Generally, the decision to move to suppress an in-court identification is a matter of trial strategy. *People v Carr*, 141 Mich App 442, 452; 367 NW2d 407 (1985). "This Court will not substitute its judgment for that of defense counsel in matters of trial strategy." *Id*. Defendant has failed to overcome the presumption that trial counsel's performance constituted sound trial strategy.

- 13 -

The record shows that defense counsel actively cross-examined Luce concerning the quality of his memory and whether he was "100 per cent" positive that defendant was the man who robbed him. Moreover, trial counsel was able to successfully exploit the equivocation in Luce's identification, compelling him to repeat his testimony that defendant merely "looks like" the armed robber. Therefore, trial counsel's failure to move to suppress Luce's in-court identification did not constitute ineffective assistance of counsel.

In any event, defendant has failed to demonstrate that there is a reasonable probability that the outcome of the trial would have been different absent the alleged deficient performance. The central issue in this case was the identification of defendant as the armed robber. There was ample evidence absent Luce's in-court identification to convict defendant of the crimes with which he was charged, including Stegg's positive identification of defendant as the robber, the surveillance video of the crime, and the evidence found at Moore's residence. Defendant has failed to show that he was prejudiced by any deficient performance.

In order to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), *cert. denied*, 493 U.S. 938, 110 S. Ct. 334 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1547 (1998). Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a

- 14 -

petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; *Austin*, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district

court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  June 3, 2011